IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRENDA SAWADA,       :
 Plaintiff        :
            :
 v.          :  CIVIL NO. AMD 06-754
            :
JOHN E. POTTER, et al.,    :
 Defendants       :

...o0o...

MEMORANDUM OPINION

Plaintiff Brenda Sawada is an employee of defendant the United States Postal Service

("USPS"). She purports to assert myriad claims for gender discrimination and sexual

harassment (Count I) and retaliation (Count II), under Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and, in a final, Count III, of her complaint, a

combined claim under the Little Tucker Act, 28 U.S.C.A. §1346 *et seq.* (on the theory that

the USPS owes her money for breach of contract) and the Due Process Clause of the Fifth

Amendment. Defendants are the Postmaster General and two of Sawada's former supervisors

who are sued in their "official capacity." Defendants have filed a pre-discovery motion for

summary judgment. The issues are fully briefed and a hearing is not necessary. The motion

shall be granted for the reasons stated within.[1]

---

[1]Manifestly, Sawada's misguided effort to balloon her discrimination and retaliation
claims  fail.
 First, her failure to exhaust her Title VII administrative remedies bars all claims that were
not timely raised informally with the EEO counselor.  It is well established that, "[b]efore a
plaintiff has standing to file suit under Title VII, [she] must exhaust [her] administrative
remedies by filing a charge with the EEOC." *See Smith v. First Union Nat'l Bank*, 202 F.3d 234,
247 (4th Cir. 2000).  For federal employees, such complaints must timely be brought within 45

(continued...)

Sawada is an Asian American female of Japanese descent. Since February 1998, she has been employed by the USPS as a level 5 Clerk on the Small Parcel Bundle Sorter ("SPBS"), at the USPS Baltimore Processing & Distribution Center. As an SPBS clerk, plaintiff's primary duties include keying mail, sweeping mail, expediting mail, handling dispatches, and setting up operations for mail delivery. Plaintiff works on "Tour 3" from 3:00 p.m. until 11:30 p.m., with Sundays and Mondays off.

Overtime (payable at 1.5 times the normal rates) and so-called "penalty overtime" (payable at 2.0 times the normal rates) for SPBS clerks is governed by a collective bargaining agreement between the USPS and the American Postal Workers' Union ("APWU

---

[1](...continued)
days of the allegedly discriminatory occurrence.  29 C.F.R. § 1614.105. Claims as to which an EEO counselor was not timely consulted may not be entertained in a juridical action. *Nealon v. Stone*, 958 F.2d 584, 589-90 (4th Cir. 1992).  Here, the only claim for which Sawada timely sought informal counseling is her claim for overtime pay. (Plaintiff properly instituted administrative proceedings in three earlier EEO actions: (1) an unlawful  harassment claim which was dismissed in 1998; (2) an alleged discriminatory denial of leave claim which was dismissed in 1999; and (3) claims of racial harassment, retaliation, and denial of leave claim which was mediated and settled in 2001.) Plainly, those matters are not encompassed by Sawada's complaint regarding overtime which is the subject of this case. They serve only to demonstrate that Sawada is familiar with federal equal employment complaint procedures.

Second, the Little Tucker Act, 28 U.S.C. §1346(a)(2), grants district courts original jurisdiction over civil contractual claims not exceeding $10,000 brought against the United States government. *Orff v. United States*, 545 U.S. 596 (2005).  A plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction over the claim.  *See Brown v. United States*, 86 F.3d 1554, 1559 (Fed. Cir. 1996).  The USPS is a "legal entity separate from the United States itself" and thus no claim lies against USPS under the Act. *Continental Cablevision*, 945 F.2d 1434, 1440 (8th Cir. 1991).

Third, no Fifth Amendment claim lies against a government official in his or her "official capacity" arising out of federal employment because Title VII provides an exclusive remedy for such claims of discrimination.  *Brown v. General Services Admin.*, 425 U.S. 820, 832 (1976); *Briones v. Runyon*, 101 F.3d 287, 189 (2d. Cir. 1996).

contract"). The contract does not require the USPS to provide employees with overtime assignments. Generally, overtime assignments are available to employees who place their names on a quarterly Overtime Desired List ("ODL"); the assignments are afforded in order of seniority. Pursuant to the APWU contract, "penalty overtime" is paid in any of the following circumstances: when an employee works (1) more than eight hours on more than four of her five scheduled days in a week; (2) more than 10 hours on her regularly scheduled workday; (3) more then eight hours on her day off; and/or (4) more than six days in a week.

As might be expected (and *hoped for*, insofar as any taxpayer would view the matter), the USPS undertook to limit its payment of the higher-cost "penalty overtime" in November 2003. Thus, union and management arrived at an agreement providing that, *inter alia*, SPBS clerks would be limited to working eight hours overtime on the days they were scheduled to be off work.

For Sawada and the other Tour 3 Sunday/Monday clerks, this posed the potential for a not insignificant reduction in income for the following reason. It is undisputed that Sunday/Monday was ordinarily the busiest time at the facility; prior to the change, therefore, Sunday/Monday clerks had frequent opportunities to earn "penalty overtime," e.g., by working more than eight hours on their days off, Sunday and Monday, or working both days. After the change described above, Sawada and the other Tour 3 Sunday/Monday clerks would not be permitted to work past 11:30 p.m. on one of their days off, and thereby lost the opportunity to earn "penalty overtime." Instead, that work would be assigned to clerks who

could perform the assignment without incurring "penalty overtime." The gravamen of Sawada's claim is her belief that her supervisors intentionally manipulated the overtime assignments so that African-American workers working other Tours would receive a disproportionately larger share of overtime and/or "penalty overtime." Specifically, in her informal EEO complaint instituted on or about November 26, 2003, Sawada complained that she had been refused the opportunity to work "penalty overtime" on Monday, November 10, 2003, and that on the following Monday, November 17, 2003, certain [African-American] employees were permitted to work "penalty overtime."[2] She later filed a formal EEOC charge on grounds of race, national origin and gender discrimination and retaliation based on the informal complaint she filed regarding the November incidents. She never sought informal counseling or otherwise properly amended her complaint for any other claims. On December 21, 2005, after Sawada declined to participate in an administrative hearing, the EEOC issued its final agency decision in favor of the agency. Plaintiff timely filed this federal complaint.

Defendants have styled the pending motion as a motion to dismiss or in the alternative for summary judgment but the motion must be treated as a motion for summary judgment. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is

---

[2]Sawada also described in the November 2003 informal complaint as "unlawful harassment" her supervisor's insistence that she use mail trays as a "false bottoms" in mail containers. In fact, the USPS orders its clerks to do this in order to avoid having employees bend over severely in order to retrieve mail from the very bottom of deep mail containers, and thereby avoid injury.

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 247 (1986).   A fact is material for purposes of summary

judgment, if, when applied to the substantive law, it affects the outcome of the litigation.

*Id*. at 248. Summary judgment is also appropriate when a party "fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Karim v. Staples, Inc.*, 210 F. Supp. 2d 737, 740 (D.Md. 2002).

Plaintiff has utterly failed to demonstrate that her claims of discrimination and

retaliation are even colorable. I am mindful that courts are properly hesitant to entertain

summary judgment motions in advance of discovery, particularly in discrimination cases.

Sawada has filed a motion pursuant to Fed.R.Civ.P. 56(f) for discovery.[3] But in federal

employment discrimination claims, it is often true that a robust administrative record is

available early in the judicial action, and, in any event, defendants have put into the

summary judgment record virtually every relevant and material document that bears on the

---

[3]The Rule 56(f) affidavits of plaintiff and her counsel are "boilerplate" in every material respect. In any event, the affidavits and accompanying motion proceed on the erroneous assumption that Sawada has properly exhausted the plethora of claims she seeks to prosecute here, but I have declined to indulge that assumption. *See supra* n. 1. Little attention is paid to the one properly exhausted claim in the affidavits, and the government correctly contends that expert testimony will hardly be relevant to show the necessary comparison between Sawada and her proper comparators in their quest for overtime and "penalty overtime" pay.

legitimacy of the USPS's "penalty overtime" policy as it is applied to plaintiff and those similarly situated, i.e., the Sunday/Monday clerks. The most that can be said on this record is that Sawada developed a "feeling" that she was not being treated fairly and, having intentionally foregone an opportunity for factual development at the administrative level, has sought to pursue discovery in order to validate her feelings. This is not sufficient.

As a matter of law, there is not a scintilla of evidence that Sawada has been discriminatorily denied opportunities to work overtime, or that the reduction in her "penalty overtime" income is for any reason other than the change in policy. *Cf. Bond v. Potter*, 348 F.Supp.2d 525, 529 (M.D.N.C. 2004)(rejecting as untimely discrimination claims based on application of the USPS's "penalty overtime" policy). In point of fact, it is undisputed that Sawada earned more overtime during the disputed period than any other person, including an African-American, on her Tour. Only four other employees are actually similarly situated to Sawada in that they held the same position , were on the ODL, and had the same scheduled days off.  The employees Sawada identifies as having earned more overtime pay are Saturday/Sunday clerks whose days off differed from Sawada's, and who, because the workweek runs from Saturday to Friday, are not similarly situated as is Sawada. *See generally Blake v. Potter*, 2006 WL 355321, *11-12 (N.D. Ohio 2006).

Plaintiff has failed to establish (or to project the likelihood of discovering evidence critical to the establishment of) a *prima facie* case of discriminatory treatment in her opportunities for overtime work. Nor is there any support for her conclusory allegation that

the reduced amount of penalty overtime she obtained in the period November 2003 through

mid-2004 was an adverse employment action causally related to her prior protected activity.

    For the reasons stated above, the motion for summary judgment shall be granted. An

Order follows.


Filed: February 9, 2007                            _____/s/_____
                                                   ANDRE M. DAVIS
                                                   UNITED STATES DISTRICT JUDGE